NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

No. 17-1195

————————————

UNITED STATES OF AMERICA

v.

JUAN CARLOS ANGUIANO-GUERRERO,
a/k/a JUAN CARLOS ANGUIANO

Juan Carlos Anguiano-Guerrero,
Appellant

————————————

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 5-16-cr-00302-001)
District Judge: Honorable Joseph F. Leeson, Junior

————————————

Submitted Under Third Circuit LAR 34.1(a)
November 14, 2017

Before: AMBRO, KRAUSE, and RENDELL, <u>Circuit Judges</u>

(Opinion filed: November 7, 2017)

————————————

OPINION[*]

————————————

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

AMBRO, Circuit Judge

Juan Carlos Anguiano-Guerrero ("Anguiano") is a native and citizen of Mexico. He has two children, Jonathon Anguiano and Dalton Anguiano, who are both American citizens. He was married to an American citizen, Heather Guerrero, though they are now divorced. During the marriage she filed a "petition for alien relative" on Anguiano's behalf, and the Department of Homeland Security waived Anguiano's inadmissibility relating to his illegal entry to the United States. He became a legal permanent resident on November 23, 2004.

A year later, Anguiano was convicted of involuntary manslaughter for fatally shooting a man during a fight. Despite his legal permanent resident status, the conviction made him deportable. After serving his sentence, he was deported to Mexico. Three months later, he was taken into custody by ICE agents near Mission, Texas, charged and convicted with illegal reentry, in violation of 8 U.S.C. § 1326(a), and sentenced to 42 months' imprisonment. After serving his sentence, he was again deported. Then, about two years later, on June 29, 2016, Anguiano was taken into custody by ICE agents in Pottstown, Pennsylvania, and again charged with illegal reentry.

In its presentence report, the Probation Office found that the base offense level for the § 1326(a) violation was eight. It applied a four-level enhancement because Anguiano had a previous conviction for illegal reentry, a ten-level enhancement for his prior manslaughter conviction, and a three-level reduction for acceptance of responsibility. Thus Anguiano was left with a total offense level of nineteen. His prior convictions resulted in six criminal history points and placed him in criminal history category III,

with an advisory Guidelines range of 37-46 months' imprisonment. This range was undisputed and applied by the District Court at sentencing.

After reviewing the § 3553(a) factors and considering arguments from counsel regarding an appropriate sentence, the Court sentenced Anguiano to 46 months in prison, at the high end of the Guidelines range. Anguiano appeals this sentence, arguing that the Court committed procedural error by failing to acknowledge four arguments he made in his sentencing memorandum for imposing a sentence at the lower end of the range.

Anguiano, however, failed to object to his sentence at trial, and so we must review for plain error. *See United States v. Flores-Mejia*, 759 F.3d 253, 255 (3d Cir. 2014) ("[W]hen a party wishes to take an appeal based on a procedural error at sentencing— such as the court's failure to meaningfully consider that party's argument or to explain one or more aspects of the sentence imposed—that party must object to the procedural error complained of after sentence is imposed in order to avoid plain error review on appeal."). An error is plain if it is "clear" or "obvious," "affects substantial rights," and "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

The Government asked the Court to impose a sentence at the high end of the Guidelines range, reasoning that this was Anguiano's third illegal reentry and he had not been deterred by his previous sentences of four years for manslaughter and 42 months for a separate occurrence of illegal reentry.

3

Anguiano asked the Court to impose a sentence at the low end of the Guidelines range, listing four arguments in support of his request: (1) his good character; (2) the circumstances and timing of his manslaughter conviction; (3) "harder" prison conditions relating to his immigration detainer; and (4) a lack of motivation to return to the United States.

Our Court presumes a sentence within the Guidelines range is reasonable. *Rita v. United States*, 551 U.S. 338, 347 (2007). *Rita* also clarified the nature of the requirement that a sentencing judge state his or her reasons for the sentence in the order or opinion and they need not be long or detailed. A short statement of reasons is perfectly sufficient, especially when a party's arguments are straightforward and conceptually simple. *Id*. at 356. "Circumstances may well make clear" the basis for the decision and in such cases "the judge normally need say no more." *Id.*

Here, the District Court articulated reasons sufficient to assure the public and the parties that the sentencing process was a reasoned process. It addressed Anguiano's sentencing arguments that were non-frivolous and had a factual basis, but cited his manslaughter conviction, criminal history, and children as reasons that he was likely to reenter the United States. The Court noted he was not deterred by prior prison sentences and returned almost immediately after being deported. It reasoned that, without a long sentence, there was a high risk of recidivism given his family ties to the United States.

As to the remaining sentencing arguments made by Anguiano, the Court did not need to address them, as they were not supported by a factual basis in the record. Anguiano cited his financial support of his children as evidence of his good character, but

4

because he spent much of his time incarcerated and provided little to no evidence of this financial support, the Court did not need to address this claim. Anguiano also argued that he would not be afforded the same opportunities in prison as an American citizen and therefore should receive a lighter sentence. Because he was not treated differently from similarly situated non-citizens who have illegally reentered the country after deportation, his claim lacks merit.

As such, it is clear from the record that the District Court listened, understood, and considered Anguiano's arguments in imposing a sentence that was at the high end of the Guidelines range. There is no error here, plain or otherwise. Accordingly, we affirm.