NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3880
_____

UNITED STATES OF AMERICA

v.

MICHAEL CERRUTI,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal Action No. 5-14-cr-00438-001)
District Judge: Honorable Jeffrey L. Schmehl

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 14, 2017

Before: VANASKIE, RENDELL, and FUENTES, *Circuit Judges*

(Filed December 19, 2017)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

VANASKIE, *Circuit Judge*.

Michael Cerruti pleaded guilty to two counts of child pornography-related charges and was sentenced to a below-Guidelines prison term of 84 months. He now challenges the substantive reasonableness of his sentence, arguing that the District Court improperly relied upon rehabilitation concerns in making its decision. For the reasons that follow, we will affirm the judgment of sentence.

I.

In April 2014, a grand jury sitting in the Eastern District of Pennsylvania returned an indictment charging Cerruti with one count of transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1), and one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). On January 14, 2016, Cerruti entered an open plea of guilty to the charged offenses. The Presentence Report ("PSR") prepared by the United States Probation Office determined that Cerruti's total offense level was 34 and that his criminal history category was VI. Taken together, these figures yielded a Sentencing Guidelines range of 210-262 months' imprisonment.

Prior to sentencing, Cerruti filed a memorandum requesting that the District Court grant a downward variance and impose the mandatory minimum sentence of five years' imprisonment. In support of his request, Cerruti described his troublesome upbringing and difficulties in school. Cerruti additionally attached to his memorandum two expert reports—one prepared by a forensic psychiatrist and the other by a psychologist—chronicling his severe mental health issues, lengthy substance abuse history, and cognitive impairments. Citing these reports, Cerruti argued that the five-year mandatory

2

minimum, coupled with a ten-year term of supervised release, would be the most appropriate sentence.

The District Court convened a sentencing hearing on October 11, 2016. Neither party objected to the PSR's calculation. The government, for its part, proposed a sentencing range of 151-188 months' imprisonment, arguing that—although the proposal was below the recommended Guidelines range—it was nevertheless a "significant sentence," one that was necessary "to make sure" that Cerruti "[will be] able to abide by societies [sic] rules and not further harm children" upon his release. (App. 40.) Cerruti, in turn, reiterated his mental health problems and "social judgment issues," again requesting that the District Court impose the five-year mandatory minimum sentence with "long-term counsel and supervision" upon his release. *Id*. at 47, 49.

After hearing from both sides and taking the parties' recommendations into account, the District Court commenced an analysis of the "factors set forth in 18[] U.S.C. [§] 3553(a)," including "the nature and circumstances of the offense committed and the history and characteristics of the defendant." *Id*. at 63. Observing that "child pornography . . . [is] one of the most serious crimes that a judge hears," the District Court sought to impose a sentence that reflected the dual aims of "protect[ing] the public from further crimes of the defendant" while "provid[ing] the defendant with the needed educational or vocational training, medical care, [and] . . . other correctional treatment in the most effective manner." *Id*. at 63–64. After reexamining the expert reports, the District Court declared that Cerruti "need[ed] a lengthy time of incarceration. He hasn't even been in the federal system yet to get started, to get acclimated, and to help a true

3

rehabilitation and a true reentry to society." *Id*. at 65.[1] The Court then granted a significant downward variance from the 210-262-month range under the Guidelines, imposing a sentence of 84 months' imprisonment with a ten-year term of supervised release.

Cerruti did not object to the District Court's sentencing judgment. This timely appeal followed.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). Because Cerruti did not lodge an objection in the District Court, we review the sentencing decisions for plain error. *United States v. Flores–Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) (citing Fed. R. Crim. P. 52(b)). "An error is plain if it is 'clear' or 'obvious,' 'affects substantial rights,' and 'affects the fairness, integrity or public reputation of judicial proceedings.'" *Id*. at 259 (quoting *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir.2006)).

## III.

On appeal, Cerruti argues that the District Court's sentencing judgment violates *Tapia v. United States*, where the Supreme Court held that "a court may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." 564 U.S. 319, 335 (2011). Cerruti contends that the District Court contravened *Tapia* by expressing concern over Cerruti's need for

---

[1] At the time of the sentencing hearing, Cerruti had been incarcerated in the Lehigh County Jail for 27 months due to parole violations.

4

rehabilitation prior to handing down the 84-month prison term. Our independent review of the record, however, leads us to conclude that no such error occurred.

In *Tapia*, the petitioner was sentenced to a within-Guidelines term of 51 months' imprisonment. *Id*. at 321. In making its sentencing judgment, the district court "referred several times to Tapia's need for drug treatment" and explicitly "indicated that Tapia should serve a prison term long enough to qualify for and complete" the Bureau of Prison's Residential 500 Hour Drug Abuse Program. *Id*. at 321–22. On certiorari review, the Supreme Court conducted an extensive analysis of the § 3582(a) sentencing factors and concluded that they "preclude[] sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation." *Id*. at 332. The Court, however, emphasized that a district court "commits no error by discussing the opportunities for rehabilitation within the prison or the benefits of specific treatment or training programs." *Id*. at 334. Thus, § 3582(a) is violated only where the sentencing court specifically calculates the length of a sentence to ensure that an offender receives certain rehabilitative care or is imprisoned for a period of time sufficient to complete a rehabilitative program. Simply mentioning the potential benefits of participating in such a program while imprisoned does not amount to a violation of *Tapia*. *United States v. Zabielski*, 711 F.3d 381, 391 (3d Cir. 2013).

In Cerruti's case, he takes issue with the following statements made by the District Court at sentencing:

> I do think the defendant needs a lengthy time of incarceration.
> He hasn't even been in the federal system yet to get started, to

5

get acclimated and to help a true rehabilitation and a true reentry to society.

(App. 65.) These statements, however, do not indicate that the District Court sentenced Cerruti for the sole purpose of receiving treatment. To the contrary, they are direct responses to concerns raised by Cerruti in the course of the sentencing hearing regarding his mental health, intellectual impairments, and history of substance abuse. Indeed, Cerruti explicitly advised the District Court that "he should undergo counsel for drug abuse while he is at the Bureau of Prisons" because "he [hadn't] really had it since [he'd] been in the Lehigh County Jail . . . ." *Id*. at 49. The District Court, after considering Cerruti's past conduct and the relevant § 3553(a) factors, expressed its agreement with Cerruti's sentiments, explaining that a transfer from county prison to federal prison would serve Cerruti well because it would allow him to "get acclimated" and receive the "true rehabilitation" that he needed. *Id*. at 65.

Thus, there is no basis to conclude that the District Court imposed or lengthened Cerruti's term of imprisonment merely to promote his rehabilitation. Instead, the District Court did precisely as *Tapia* permits by "trying to get" Cerruti "into an effective drug treatment program." *Tapia*, 564 U.S. at 334. "This type of reference to rehabilitation is, under *Tapia*, both permitted an encouraged." *Zabielski*, 711 F.3d at 392 (citing *Tapia*, 564 U.S. at 334).

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.

6